**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CORINE E. WORTHY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 5:25-CV-424 (CAR)** |
| | : | |
| **TROY MEINK, SECRETARY OF THE UNITED STATES AIR FORCE,** | : | |
| | : | |
| **Defendant.** | : | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff Corine E. Worthy, proceeding *pro se*, filed this employment discrimination, retaliation, and hostile work environment suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), against Defendant Troy Meink, in his official capacity as Secretary of the Air Force (the "Agency"), asserting she was discriminated against based on her race, sex, and age; retaliated against for previous Equal Employment Opportunity ("EEO") activity; and harassed and subjected to a hostile work environment during her civilian employment with the United States Air Force at Robins Air Force Base ("AFB") in Warner Robins, Georgia.

Plaintiff filed her original Complaint, and the Agency timely moved to dismiss it. In response, Plaintiff filed her Amended Complaint, and the Agency filed the current

Motion to Dismiss Plaintiff's Amended Complaint. Because Plaintiff's Amended Complaint supersedes her original complaint, the Agency's original Motion to Dismiss [Doc. 7] is rendered **MOOT**.[1] And having carefully considered the Agency's Motion to Dismiss Plaintiff's Amended Complaint, the operative pleadings, and the applicable law, the Court **GRANTS** the Motion [Doc. 10]. Plaintiff's claims are **DISMISSED** for failure to state a claim upon which relief may be granted.[2]

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[3] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[6]

---

[1] *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (An amended pleading "supersedes the former pleading" such that "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotation marks and citation omitted).

[2] Ordinarily, the Court would afford a *pro se* plaintiff an opportunity to amend her complaint. But Plaintiff has already amended her Complaint in response to the Agency's first Motion to Dismiss.

[3] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

[6] *Bell Atlantic Corp.*, 550 U.S. at 556.

When determining the adequacy of the allegations in the Complaint, the Court remains mindful that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."[7] Nevertheless, "[e]ven with *pro se* litigants, 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'"[8]

**BACKGROUND**

Plaintiff, an African American woman over age 40, asserts employment discrimination claims against the Agency for disparate treatment, hostile work environment, retaliation, and retaliatory hostile work environment. This is Plaintiff's fifth civil action in this District against the Agency asserting employment discrimination claims for various events occurring between 2016 and 2021.[9] Plaintiff filed her first informal EEO Complaint in April 2017, followed by her formal complaint in July 2017 and five amendments, the fifth filed in September 2018.[10] This lawsuit is based on her second EEO Complaint. She filed an informal complaint on September 17, 2018, followed by her formal complaint on January 2, 2019, followed by three amendments, the third filed on September 5, 2019.

---

[7] *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

[8] *United States v. Korman*, No. 07-80998-Civ., 2008 WL 5662165, at *3 (S.D. Fla. Nov. 5, 2008) (quoting *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1246 (11th Cir. 2005)).

[9] *See Worthy v. Meink*, Civil Action No. 5:23-CV-519 (CAR) ("*Worthy I*"); *Worthy v. Meink*, Civil Action No. 5:24-CV-16 (TES) ("*Worthy II*"); *Worthy v. Meink*, Civil Action No. 5:25-CV-335 (CAR) ("*Worthy III*"); *Worthy v. Meink*, Civil Action No. 5:25-cv-398 (CAR) ("*Worthy IV*"); and *Worthy v. Meink*, Civil Action No. 5:25-CV-424 (CAR) ("*Worthy V*") (current action).

[10] Plaintiff's first EEO Complaint is the subject of *Worthy I*.

Plaintiff's claims in this case are based on events that occurred between August 2018 and July 2019 while she was employed as a civilian Procedures and Analysis ("P&A") Supervisor and then a Process Analyst at Robins AFB. Her claims in this case pick up where her first case, *Worthy I*, left off. For background, and as described in *Worthy I*, in June 2018, Plaintiff was working in the 561st Aircraft Maintenance Squad ("AMXS") as a P&A Supervisor. In late June, Plaintiff requested to be removed from the "hostile environment within 561 AMXS[.]"[11] On July 10, 2018, Plaintiff filed a fourth amendment to her first EEO Complaint. On July 19, 2018, Timothy Gray, Deputy Director of 402 [Aircraft Maintenance Group ("AMXG")], sent Plaintiff an email informing her he "found an analyst position in [Maintenance Support Group ("MDXS")] here in AMXG" that he "believe[d]] would be suited for [Plaintiff's] talents and expertise."[12] The position was "non-supervisory," and he asked Plaintiff to "advise [him] if [she] fe[lt] [this position] would relieve the current tension [she] fe[lt] and resolve [her] concerns."[13]

<u>Facts Alleged in Amended Complaint</u>

On August 13, 2018, approximately two months after Plaintiff requested to be removed from the "hostile environment" of the 561st AMXS, Mr. Gray "moved" Plaintiff to the 402 AMXG/MXDS at Robins AFB.[14] Eleven days later, on August 24, 2018, Plaintiff

---

[11] Order Granting Defendant's partial Motion to Dismiss Amended Complaint in *Worthy I*, p. 10 [Doc. 25].
[12] *Id.* at p. 25.
[13] *Id.*
[14] Am. Compl., p. 8 [Doc. 9].

"became aware her Flight Line Competency Card (or AF IMT 483 form) had been cancelled by [her direct supervisor] Ben Stuart."[15]

While Plaintiff was assigned to the 561st AMXS, she held a P&A supervisory position. After she was moved to the 402nd AMXG/MXDS, on August 27, 2018, Melanie Hartzog, Plaintiff's second level supervisor, notified Plaintiff that management was "processing a reassignment action to place [her] on a GS-12 MXDS position…. There [wa]s not an option for [Plaintiff] to remain on the NH-03 position as there [we]re no P&A Chief positions available."[16] Plaintiff responded to Ms. Hartzog and William Lyons, Plaintiff's first level supervisor, and asked for a meeting "with the person or organization at the complex who made this decision" because she felt the reassignment was "an adverse action."[17]

On September 7, 2018, Plaintiff was appointed to conduct a Commander Directed Investigation ("CDI") wherein she was tasked with interviewing personnel and taking sworn statements.[18] On September 14, 2018, Plaintiff asked to receive a temporary flight line parking pass to avoid "having to use additional time to walk over the bridge to the parking lot to access [her vehicle]" and to ease the burden of transporting equipment she needed to set up a mobile office.[19] Mr. Lyons and Ms. Hartzog "refused to issue" the

---

[15] *Id.* at p. 1.
[16] Aug. 27, 2018 email from Melanie Hartzog to Plaintiff [Doc. 9-10, p. 4].
[17] Aug. 28, 2018 email from Plaintiff to Melanie Hartzog [Doc. 9-10, p. 4].
[18] Memorandum to Plaintiff, Subject CDI [Doc. 9-12, p. 2]. The subject matter of the investigation has been redacted.
[19] Am. Compl., p. 1.

parking pass.[20] Ten days later, on September 17, 2018, Plaintiff contacted the EEO at Robins AFB and filed an informal complaint of discrimination and retaliation.[21]

On October 26, 2018, Mr. Stuart, Plaintiff's direct supervisor, presented her with her midpoint review for the 2018 appraisal cycle that ended on September 30, 2018.[22] The assessment was dated May 26, 2018.[23] Thus, Plaintiff received it five months after the assessment was performed, and almost one month after the 2018 appraisal cycle ended. The appraisal "documented Plaintiff for deficiencies"[24] and projected her Expected Overall Contribution Score ("OCS") to be a 73.[25]

On November 8, 2018, Mr. Lyons directed Plaintiff "to remove her supervisor lanyard for which she currently held the supervisory position and [was] not provide[d] the governing authority for asking her to remove the lanyard, despite Plaintiff's request."[26] Plaintiff alleges she "was known as a supervisor and had been observed wearing her supervisor lanyard throughout the 402 AMXG community since 2013 and to have 402 AMXG arbitrarily remove her supervisor lanyard and remain in the same work environment" was "abusive, unfair, and retaliatory for opposing management" and "made her feel intimidated, insulted and humiliated in the workplace."[27]

---

[20] *Id.* at p. 2.
[21] *Id.* at pp. 8-9.
[22] *Id.* at p. 2.
[23] Midpoint Closeout Assessment [Doc. 9-13].
[24] Am. Compl., pp. 2-3.
[25] Midpoint Closeout Assessment.
[26] Am. Compl., p. 3.
[27] *Id.*

On December 4, 2018, the EEO informed Plaintiff's supervisors, including Mr. Gray, Mr. Stuart, Mr. Lyons, and Ms. Hertzog, that Plaintiff had filed an informal complaint of discrimination.[28] Fourteen days later, on December 18, 2018, Plaintiff alleges "Mr. Gray and/or Ms. Hartzog initiated a request for personnel action, in which they removed Plaintiff from her permanent NH-0301-03 Procedures and Analysis Supervisor position and career path effective February 17, 2019, which Plaintiff opposed" and reassigned her to GS-0301-12, Process Analyst, a "less desirable position with menial duties such as prepping spreadsheets for distribution, which Plaintiff opposed."[29] Plaintiff alleges she was not notified of the reassignment until March 2019.[30]

On January 2, 2019, Plaintiff filed a formal complaint of discrimination with the EEO.[31]

On January 10, 2019, Plaintiff received her Contribution-Based Compensation and Appraisal System ("CCAS") Salary Appraisal Form, wherein she received an OCS of 71, two points less than the 73 Expected OCS she received on her midpoint review, "a performance rating score of Unacceptable (1), zero dollars (0) general pay increase and

---

[28] *Id.* at pp. 4-5; Attachment 15, Dec. 4, 2018 email from Courtney Del Monte to officials informing them of Plaintiff's complaint [Doc. 9-15, pp. 2-3].
[29] Am. Compl., p. 6.
[30] *Id.* at pp. 6-7.
[31] *Id.* at p. 9.

Salary Increase, and a $448 Contribution Award."[32] On March 22, 2019, Plaintiff filed her first amendment to the EEO complaint.[33]

On June 25, 2019, Plaintiff underwent her Defense Performance and Appraisal Program ("DPMAP") progress review with her direct supervisor, Mr. Lyons.[34] Plaintiff alleges Mr. Lyons "repeatedly made comments such as, 'You have been the boss; you have been the Procedures and Analysis Supervisor,' instead of providing feedback[.]"[35] Moreover, during the meeting, "Plaintiff was forced to allow Ryan Prosperie, a supervisor not within her performance or supervisory chain, to attend her DPMAP meeting … which made her feel apprehensive the workplace."[36] Mr. Lyons also assigned her an "lower-grade duty" of Overtime Monitor "normally performed by GS-11 and below)[,]" and she was "assigned to work with and answer to lower-graded employees and perform menial duties" such as preparing spreadsheets for distribution compared to the "complexity of her duties as NH-0301-03 Supervisor" which included "performing investigations (including CDI), special projects, initiatives and out-of-scope work within 402 AMXG and 561 AMXS."[37] Plaintiff filed her second amendment to the EEO complaint on June 27, 2019.[38]

---

[32] *Id.* at p. 3.
[33] *Id.* at p. 9.
[34] *Id.*, Claims 9 and10.
[35] *Id.*, p. 7.
[36] *Id.*
[37] *Id.*, pp. 7-8.
[38] *Id.* at p. 9.

On July 3, 2019 "Plaintiff was separated from her coworkers and forced to work in isolation, when Mr. Lyons moved two White male employees (Timothy McGregor, GS-11, with whom she worked the Overtime duty and Wesley Wood, GS-11, Maintenance Production Analyst-Workload) from the shared four-man cubicle to another location."[39]

Plaintiff filed her third and final amendment to her EEO complaint on September 17, 2019.[40] Plaintiff received her right to sue letter on September 23, 2025, and timely filed this action on September 30, 2025. After the Agency moved to dismiss Plaintiff's original Complaint, Plaintiff filed an Amended Complaint, rendering the Agency's first motion to dismiss moot. The Agency now moves to dismiss Plaintiff's Amended Complaint.

**ANALYSIS**

Plaintiff asserts claims for disparate treatment and hostile work environment claims based on her race, gender, and age; retaliation; and retaliatory hostile work environment. As explained below, Plaintiff fails to state any claim for relief.

A. Disparate Treatment Claims (Title VII and ADEA)

Federal employees' claims of race- and sex-based disparate treatment arise under 42 U.S.C. § 2000e-16(a), Title VII's federal-sector provision. That provision provides in pertinent part that "[a]ll personnel actions affecting [federal] employees … shall be made

---

[39] *Id.* at p. 8.
[40] *Id.* at p. 9.

free from any discrimination based on … race … [or] sex ….”[41] “The ADEA has a similar federal-sector provision[, 29 U.S.C. § 633a(a),] which provides that personnel actions affecting agency employees aged 40 years or older shall be made free from any ‘discrimination based on age.’”[42] “Since the relevant provisions of Title VII and the ADEA are ‘materially identical,’ [the Eleventh Circuit] ha[s] construed them the same way.”[43] “Both provisions ‘demand[ ] that personnel actions be untainted by *any* consideration’ of the protected basis—race and [sex] (as relevant here) under Title VII, and age under the ADEA.”[44] “[A] federal employer violates the law if it allows the protected characteristic discrimination to contribute to any personnel action—even if the federal employer would have made precisely the same decision had it not engaged in the protected characteristic discrimination.”[45]

Thus, Plaintiff does not have to allege that race, sex, or age was the but-for cause of the personnel action, but only that the “decision was in some way tainted by … discrimination.”[46] She may do so, for example, by “provid[ing] evidence of a comparator employee—one similarly situated in all material respects—who was treated

---

[41] 42 U.S.C. § 2000e-16(a); *see also Buckley v. Sec'y of Army*, 97 F.4th 784, 798 (11th Cir. 2024) (explaining that § 2000e-16(a) “requires federal-sector employees to make all personnel actions free from any discrimination”) (cleaned up).
[42] *Durr v. Sec'y of Dep't of Veterans Affs.*, 2022 WL 23125086, *2 (11th Cir. June 28, 2022) (quoting 29 U.S.C. § 633a(a))).
[43] *Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858, 865 (11th Cir. 2025) (citing *Babb v. Sec'y of Veterans Affs.*, 992 F.3d 1193, 1198 (11th Cir. 2021) (*“Babb II”*)).
[44] *Id.* (citing *Babb v. Wilkie*, 589 U.S. 399, 402 (2020) (*“Babb I”*) (emphasis added)).
[45] *Id.* (internal quotation marks and citation omitted).
[46] *Malone v. U.S. Att'y Gen.*, 858 F. App'x 296, 301 (11th Cir. 2021).

differently."[47] Or, more broadly, she can point to "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."[48] Such evidence "include[es] discriminatory comments, suspicious timing, arbitrariness in the employer's actions, pretext in the employer's rationale, better treatment of similarly situated … employees outside the protected group, and similar experiences by … employees [within the protected group]."[49] In sum, absent direct evidence, a federal-sector plaintiff must still point to circumstantial evidence demonstrating discrimination or retaliation, but she bears a lighter burden on this point than a non-federal-sector plaintiff under *McDonnell Douglas*.[50]

Plaintiff alleges disparate treatment in Claims 3, 5-7, and 11, but she fails to provide enough factual matter taken as true to sufficiently state any claim for intentional discrimination based on race, sex, or age. Plaintiff alleges she was subjected to disparate treatment in her mid-point review for the 2018 appraisal cycle ending on September 30, 2018, and in her Salary Appraisal Form on January 10, 2019, both of which documented deficiencies and contained negative comments; and when Plaintiff was removed from her P&A Supervisor position and reassigned to the "less desirable" Process Analyst position. But Plaintiff's claims rest exclusively on her conclusory allegation that she suffered race,

---

[47] *Lewis v. Sec'y of U.S. Air Force*, 2022 WL 2377164, at *11 (11th Cir. June 30, 2022).
[48] *Id.* at 9 (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)).
[49] *Bell v. Sec'y, Dep't of Veterans Affs.*, 2024 WL 1462405, at *4 (11th Cir. April 4, 2024).
[50] *See Rosado,* 127 F.4th at 866 ("[I]f a federal employee wishes to use the *McDonnell Douglas* framework to state a claim, [s]he may continue to do so. It's just that *McDonnell Douglas* imposes a heavier burden than a federal employee must satisfy.").

sex, and age discrimination because she is an African American woman over age 40. She fails to provide any other factual allegations to plausibly infer that her race, sex, or age played any part in the Agency's decision-making process in reaching any of the alleged adverse employment actions.

Plaintiff attempts to support her disparate treatment Claim 5 by offering two purported comparators that the Agency allegedly treated more favorably, but she fails to provide any allegations as to how they are similarly situated to her. Plaintiff simply contends she was treated "harsher" and less favorably than two white males, Brian Scarbrough and Mr. Stuart, "when she received a performance rating score of Unacceptable (1), zero dollars (0) general pay increase and Salary Increase, and a $448 Contribution Award."[51] She neither alleges that the purported comparators are similarly situated to her or how they are similarly situated to her. Indeed, she provides nothing about their workplace performance, their corresponding salary appraisal scores, whether they were subject to the same employment policies, any offenses they committed, or how they may have been subject to any punishment. Moreover, Mr. Stuart was Plaintiff's direct supervisor, so he and Plaintiff are not proper comparators. Plaintiff has failed to provide sufficient allegations to plausibly allege she was treated differently from them or that she was treated differently on the basis of a protected characteristic.

---

[51] Am. Compl., Claim 5, pp. 4-5.

Because Plaintiff has failed to plausibly allege race, sex, or age discrimination played "any role in the way [Plaintiff's] employer ma[d]e a[ny] decision,"[52] her disparate treatment claims must be dismissed.

B. Hostile Work Environment/Harassment Claims

In Claims 3, 5-7, and 11, Plaintiff alleges she was harassed and subjected to a hostile work environment based on her race, sex, and age in violation of Title VII and the ADEA. To establish a hostile work environment claim under Title VII and the ADEA, Plaintiff must show: "(1) she is a member of protected class; (2) she experienced unwelcome harassment; (3) the harassment was [based on race, sex, or age]; (4) the harassment was 'severe or pervasive enough to alter the terms and conditions of [her] employment and create a discriminatorily abusive working environment;' and (5) 'the employer is responsible for the environment under a theory of either vicarious or direct liability.'"[53]

Again, Plaintiff wholly fails to allege that any alleged harassment was in any way based on or connected to race, sex, or age discrimination. There is no allegation any person made any statement or performed any act that would suggest race, sex, or age-based animosity existed in Plaintiff's work environment. Plaintiff cannot sustain her claims based on her wholly conclusory allegations that she was harassed and subjected

---

[52] *Buckley v. Sec'y of Army*, 97 F.4th 784, 793 (11th Cir. 2024).
[53] *Id.* at 796 (quoting *Adams v. Austal U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

to a hostile work environment because of her race, sex, and age.[54] Thus, Plaintiff's harassment/hostile work environment claims must be dismissed.

C. Retaliation and Retaliatory Hostile Work Environment Claims

Plaintiff alleges retaliation and retaliatory hostile work environment in each of her 11 claims.

In addition to prohibiting unlawful discrimination, Title VII and the ADEA prohibit retaliation against federal employees who engage in protected activity, such as complaining about discrimination.[55] The Eleventh Circuit has held that Title VII and the ADEA's "prohibition of 'any discrimination' also 'directly "bars reprisals against federal employees who file charges of discrimination."'"[56] To state a claim for retaliation, "an employee must show that (1) she engaged in protected activity …; (2) she suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action."[57] Like a discrimination claim, a federal employee need not show that retaliation was the but-for cause of an employment action; it is enough "that retaliation somehow

---

[54] The Court notes Plaintiff's claims also fail because she fails to plausibly allege any harassment was "severe or pervasive enough to altar the terms and conditions of [her] employment and create a discriminatorily abusive working environment." *Id.*

[55] *See Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (holding the ADEA bars retaliation for complaining about age discrimination); *Gilliam v. U.S. Dep't of Veterans Affairs*, 822 F. App'x 985, 989 (11th Cir. 2020) (Title VII's § 2000e-16(a) "extends to federal employees the same protections against discrimination and retaliation that are provided to private-sector employees")(citing *Porter v. Adams*, 639 F.2d 273, 278 (5th Cir. 1981)).

[56] *Buckley*, 97 F.4th at 797 (citing *Babb II*, 992 F.3d at 1203 (quoting *Porter v. Adams*, 639 F.2d 273, 277-78 (5th Cir. Unit A Mar. 1981))).

[57] *Varnedoe v. Postmaster Gen.*, 2022 WL 35614, *2 (11th Cir. Jan. 4, 2022).

figured into the process that led to the final decision" without having to satisfy the *McDonnell Douglas* framework.[58]

The Court will analyze Plaintiff's retaliation and retaliatory hostile work environment claims together. Although the elements under a retaliatory hostile work environment claim differ slightly from those of a retaliation claim, the same standard applies—i.e., whether the employer's action might have dissuaded a reasonable worker from making or supporting a charge of discrimination.[59] Much like a traditional retaliation claim, "to state a claim for retaliatory hostile work environment, a federal-sector plaintiff must establish that, to retaliate against [her] for engaging in protected [ ] activity, [her] employer created or tolerated a work environment that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination' and that environment rose the level of a 'personnel action.'"[60]

As explained below, for Claims 1, 2, 4, and 9-11, the Agency's actions of which Plaintiff complains, even when accepted as true, do not meet the "materially adverse" personnel action sufficient to state a retaliation claim; and for her remaining retaliation claims Plaintiff fails to sufficiently allege facts to support causation.

a. <u>Claims 1, 2, 4, and 9-11: No Materially Adverse Personnel Action</u>

---

[58] *Rosado*, 127 F.4th at 876.

[59] *Buckley*, 97 F.4h at 799 (citing *Babb II*, 992 F.3d at 1207) ("[R]ecogniz[ing] that retaliatory hostile work environment claims are 'really … retaliation claims … rather than hostile work environment claims.'").

[60] *Id.* (quoting *Babb II*, 992 at 1207-09).

Plaintiff alleges the Agency retaliated against her for her EEO activity when a supervisor cancelled her flight line security card in August 2018 (Claim 1); a supervisor refused to issue her a temporary flight line parking pass while she was commissioned as investigator in September 2018 (Claim 2); a supervisor directed Plaintiff to remove her supervisor lanyard in November 2018 (Claim 4); a supervisor told Plaintiff during a progress review in June 2019, "'You have been the boss; you have been the Procedures and Analysis Supervisor,' instead of providing feedback to Plaintiff" (Claim 9); a supervisor assigned Plaintiff "to work with and answer to lower-graded employees and perform menial duties" in June 2019 (Claim 10); and a supervisor "separated [Plaintiff] from her coworkers and forced [her] to work in isolation" when two white males were moved "from the shared four-man cubicle to another location" (Claim 11). These claims must be dismissed because they do not involve any materially adverse personnel action.

Title VII's and the ADEA's anti-retaliation provisions "appl[y] only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm."[61] To support a retaliation claim, the allegedly retaliatory conduct must have been "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination."[62] "The Supreme Court has emphasized that 'a plaintiff must show that a reasonable employee would have found the challenged action *materially* adverse,'

[61] *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).
[62] *Id.* (cleaned up).

separating 'significant from trivial harms' such as 'petty slights, minor annoyances, and simple lack of good manners.'"[63]

*(i) Claims 1 and 2*

Plaintiff's complaints in Claims 1 and 2 regarding the loss of her "flight line" driving and parking privileges are not "serious enough to dissuade a reasonable worder from making or supporting a charge of discrimination."[64] Although Plaintiff contends these privileges would have made travelling to her car more helpful, she provides no allegations regarding the factors involved in reviewing the request, or the frequency in which similar requests were approved or rejected. The alleged mistreatment in these Claims is akin to a "petty slight" or "minor annoyance." Because Plaintiff fails to sufficiently allege a materially adverse personnel action, Plaintiff's retaliation claims in Claims 1 and 2 must be dismissed.

*(ii) Claim 4*

Similarly, Plaintiff's complaint in Claim 4 regarding being asked to remove her supervisor lanyard in November 2018, does not rise to a materially adverse action. Although Plaintiff alleges she was entitled to wear the lanyard, Plaintiff does not provide the significance of asking her to remove her lanyard or how it negatively impacted her employment. The mere fact she was directed to remove her supervisor lanyard is not a

---

[63] *Terrell v. Dep't of Veterans Affairs*, 98 F.4th 1343, 1356 (11th Cir. 2024) (emphasis in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
[64] *Muldrew*, 601 U.S. at 355.

materially adverse personnel action "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination."[65] Thus, Plaintiff fails to state a retaliation claim in Claim 4.

*(iii) Claim 9*

Plaintiff's disagreement and dissatisfaction with her unfavorable progress review in June 2019, and the fact that another supervisor was included in the meeting also does not rise to a materially adverse action. Plaintiff does not assert how the unfavorable performance review or the presence of the other supervisor impacted her employment. Retaliation in the form of an unfavorable performance review, without more, does not constitute a materially adverse action,[66] and because no reasonable employee could construe the presence of another supervisor in a performance review as serious enough to dissuade the employee from making or supporting a charge of discrimination, Claim 9 cannot support a retaliation claim.

*(iv) Claim 10*

Plaintiff alleges she was "assigned to work with and answer to lower-graded employees and perform menial duties" but describes only one task—prepping spreadsheets—and does not explain how this compared to her previous work or whether it was appropriate for her new role. Plaintiff's conclusory description that she had to

---

[65] *Id.*

[66] *See Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 926 (11th Cir. 2014) (noting that "[a]n employment action is 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment")

perform "menial" duties does is insufficient to state she suffered a material adverse action.

*(v) Claim 11*

Finally, Plaintiff alleges she was "separated from her coworkers and forced to work in isolation," after a supervisor moved two employees away from her work area. Again, such routine workplace friction is insufficient to dissuade a reasonable employee from making or supporting a charge a discrimination.

b. Claims 3 and 5-8: No Causation[67]

Retaliation claims under Title VII and the ADEA require there to be a causal connection between the protected activity and the adverse employment action.[68] To establish a causal connection, a plaintiff must show that the relevant decision-maker was aware of the protected activity,[69] and for a federal employee, "it's enough to establish that retaliation somehow figured into the process that led to the final decision."[70] "Causation can be established by showing close temporal proximity between the protected activity

---

[67] The Court notes all of Plaintiff's retaliation and retaliatory hostile work environment claims fail to sufficiently allege causation. Although not explicitly stated, all of Plaintiff's retaliation claims rely on temporal proximity, but she has failed to allege any specific causal link between the protected activity and the alleged adverse actions, and she has not alleged sufficient facts to find "close temporal proximity" in any of her retaliation claims.

[68] *Varnedoe*, 2022 WL 35614 at *2.

[69] *Boyd v. U.S. Postmaster Gen.*, 2025 WL 3471677, at *8 (11th Cir. Dec. 3, 2025) (citing *Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1351 (11th Cir. 2022)).

[70] *Rosado*, 127 F.4th at 876 (citing *Buckley*, 97 F.4th at 798).

and the employment action at issue, '[b]ut mere temporal proximity, without more, must be very close.'"[71]

(i) *Claim 3*[72]

In Claim 3, Plaintiff alleges the Agency unlawfully and undeservedly presented her with an unfavorable midpoint performance review on October 26, 2018, in retaliation for filing her fourth amendment to her first EEO Complaint over three months earlier on July 10, 2018. Other than conclusory statements, Plaintiff alleges no other facts to support a causal link in this claim, and thus, causation can only be sustained through the temporal proximity between her EEO complaint and the unfavorable performance review. But the Eleventh Circuit "has held in a published opinion that a three-month gap is not considered 'very close' such that temporal proximity alone is sufficient" to establish causation.[73] Moreover, the midpoint performance review is dated May 26, 2018, over a month *before* Plaintiff filed her fourth amendment to her first EEO Complaint on July 10, 2018. Thus, Plaintiff's retaliation claim in Claims 3 fails to sufficiently state a claim.

(ii) *Claims 5-8*

In Claims 5-8, Plaintiff alleges her unfavorable Salary Appraisal Form received on January 10, 2019 (Claim 5), and her supervisors' request for personnel action on

---

[71] *Boyd v. U.S. Postmaster Gen.*, 2025 WL 3471677, at *7 (11th Cir. Dec. 3, 2025) (quoting *Thomas v. Cooper lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

[72] Claim 3 also fails because Plaintiff alleges no facts from which the Court can infer the relevant decisionmaker, Mr. Stuart, knew of Plaintiff's protected activity.

[73] *Jacomb v. BBVA Compass Bank*, 791 F. App'x 120, 124 (11th Cir. 2019).

December 18, 2018, to remove Plaintiff from her P&A Supervisor position (Claim 6) and reassign her to a Process Analyst position (Claims 7 and 8) were in retaliation for her informal EEO complaint filed on September 17, 2018, which her supervisors received notice of on December 4, 2018. Again, Plaintiff alleges no other facts to support a causal link in these claims, and thus, causation can only be sustained through temporal proximity between her protected activity and the alleged adverse actions.

When calculating temporal proximity, a court must use the date when the decisionmaker acquired knowledge of the employee's protected activity.[74] Because each of Plaintiff's alleged adverse actions occurred just over a month or less after the relevant decisionmakers received knowledge of Plaintiff's complaint, it appears "very close" temporal proximity is satisfied.

But "[t]emporal proximity between [knowledge of] the protected activity and the adverse action alone generally cannot show causation when the employer has contemplated the adverse action before [knowledge of] the protected activity takes place."[75]

---

[74] *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (noting the necessity of close "temporal proximity between an employer's knowledge of protected activity and the adverse employment action"); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (2004) (holding that temporal proximity is determined by examining the time period between the adverse action and employer's "awareness" or "knowledge of protected expression").

[75] *Tucker v. Fla. Dep't of Transp.*, 678 F. App'x 893, 896 (11th Cir. 2017) (citing *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1245 (11th Cir. 2016) (concluding that "no triable issue of causation exists" in retaliation claim when school district raised eithics concerns prior to administrator's protected activity, even though formal ethics complaint was filed afterwards); *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[W]hen an employer contemplates an adverse employment action before an employee

It is clear from Plaintiff's Amended Complaint that Plaintiff's supervisors contemplated both the Salary Appraisal Form and her reassignment from the P&A Supervisor position to Process Analyst position before they knew of her EEO complaint on December 4, 2018. Plaintiff admits she received notice of the deficiencies upon which her Salary Appraisal Form was based when she received her mid-point assessment on October 26, 2018, over a month before her supervisor received notice of her complaint.[76] As for her reassignment to the Process Analyst GS-12 position, Plaintiff received notice on August 27, 2018, over three months before her supervisors received notice of her EEO Complaint (and three weeks before she even filed her informal EEO complaint on September 17, 2018), that she was "being management reassigned to MXDS and we are processing a reassignment action to place you on a GS-12 MXDS position."[77] Because Plaintiff's supervisors contemplated the alleged adverse actions before knowledge of the protected activity took place, Plaintiff cannot rely on temporal proximity alone to establish causation. And because Plaintiff alleges no other facts from which the Court can plausibly infer a causal link between her protected activity and the adverse actions, Plaintiff's retaliation claims in Claims 5-8 fail to state claim.

## CONCLUSION

---

engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

[76] Am. Compl., Claim 5, p. 5.

[77] Aug. 27, 2028 email from Melanie Hartzog to Plaintiff [Doc. 9-10, p. 4].

As explained above, because Plaintiff's Amended Complaint supersedes her original complaint, the Agency's original Motion to Dismiss [Doc. 7] is rendered **MOOT**.[78] And having carefully considered the Agency's Motion to Dismiss Plaintiff's Amended Complaint, the operative pleadings, and the applicable law, the Court **GRANTS** the Motion [Doc. 10]. Plaintiff's claims are **DISMISSED** for failure to state a claim upon which relief may be granted.[79]

**SO ORDERED,** this 25th day of August, 2026.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

[78] *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (An amended pleading "supersedes the former pleading" such that "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotation marks and citation omitted).

[79] Ordinarily, the Court would afford a *pro se* plaintiff an opportunity to amend her complaint. But Plaintiff has already amended her Complaint in response to the Agency's first Motion to Dismiss.